UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE No. 25-CR-80015

UNITED STATES OF AMERICA,

v.

CORY LLOYD and
STEVEN STRONG,

      *Defendants.*
_____/

### CORY LLOYD'S MOTION TO EXCLUDE INEXTRICABLY INTERTWINED EVIDENCE AND EVIDENCE PURSUANT TO RULE 404(b)

Cory Lloyd, by and through undersigned counsel, respectfully requests entry of an order prohibiting the Government from introducing evidence summarized in its "Notice of Intent to Introduce Inextricably Intertwined Evidence and Evidence Pursuant to Rule 404(b)" (hereinafter the "Notice"). [ECF No. 87.] The sheer breadth of the Government's Notice—spanning 20 pages and more than a dozen subtopics—underscore the need to exclude the evidence described therein, not only to avoid undue prejudice, but also to avoid multiple "trials within trials."[1] The Government's proffered evidence, if permitted, would prolong the trial by days, and require Mr. Lloyd to call additional witnesses and offer new exhibits to defend himself against multiple, distinct incidents, including investigations by various government agencies.

### I.    The Breadth of the Government's Proffered 404(b) Evidence

As to Cory Lloyd, the Government intends to introduce evidence concerning: (i) four (4) distinct complaints from the Centers for Medicare & Medicaid Services ("CMS"), each involving

---

[1] By comparison, the Government's Superseding indictment, which includes 7 pages of General Allegations concerning the Medicare Program and the ACA Application process, is 20 pages long, the same length as its 404(b) notice.

1

distinct consumer-applicants and factual allegations; (ii) two Notices of Immediate Suspension from CMS directed to Mr. Lloyd and his colleague at Fiorella Insurance Agency ("Fiorella"), respectively; (iii) four distinct Notices of Investigation from the Florida Department of Financial Services ("DFS"), two of which were directed to Mr. Lloyd in September 2019 and June 2021, respectively, and two others directed to Fiorella and a colleague at Fiorella, respectively; (iv) the written responses by Cory Lloyd, Fiorella, and his colleagues in response to each of the above investigations and suspensions; (v) a Civil Investigative Demand ("CID") issued by the Department of Justice's Civil Division in connection with a parallel, civil investigation;[2] and (vi) Fiorella's "digital" and "out of state" departments, neither of which are encompassed in the Superseding Indictment.

Further exacerbating the problem, the Government intends to introduce several categories of 404(b) evidence against co-defendant Steven Strong, including: (i) evidence of "multiple," unspecified investigations of Mr. Strong that allegedly put him on notice of fraudulent and problematic enrollments; (ii) evidence that that Strong received three termination letters, and one warning letter regarding potential termination, from four distinct insurance brokers in April, May, June, and July of 2018, respectively; (iii) evidence that Mr. Strong and his wife were each terminated from the CMS Marketplace, precluding them from enrolling people in Affordance Care Act ("ACA") plans; (iv) evidence that Strong and his Co-Conspirator 1 allegedly made false statements in letters responding to their respective terminations from the CMS Marketplace; (v) evidence concerning uncharged, "out of state" street marketing; and (vi) evidence that Mr. Strong

---

[2] Contemporaneous with the filing of this motion, Mr. Lloyd has also filed an Omnibus Motion *in Limine*. In that Omnibus Motion, Mr. Lloyd moves to strike untimely discovery, in part, due to the Government's untimely productions related to the CID. The Government issued CIDs issued to Fiorella, "Company 2," and at least two other corporate entities, and then filed the Indictment in this case before obtaining complete responses. This is one of the many reasons that the Government has propounded 17 batches of discovery, often without articulating "good cause," after the deadline had passed.

submitted a purportedly false application on his own behalf to obtain government subsidized ACA insurance.

      **II.**      <u>**The Government's Evidence Is Not Inextricably Intertwined with the Charged Offenses**</u>

      The Government contends that "[m]uch of this evidence is intrinsic evidence of the conspiracies and substantive counts charged in the Superseding Indictment or is inextricably intertwined with the charges," but explained that "in an abundance of caution and in the interest of full disclosure, the government is also noticing this evidence under FRE 404(b)(2) to prove the Defendants' knowledge, intent, motive, and absence of mistake." *Id*. at 1. With few exceptions, the Government does not identify with specificity—despite its decision to list more than a dozen incidents of "other bad acts"—which are purportedly "inextricably intertwined" and which are subject to the 404(b) standard.

      "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir.1989).

      But the Government's Notice undermines the contention that the evidence forms a natural part of the account of the crime, or is necessary to complete the story on the crime for the jury. The Government emphasizes repeatedly that it intends to offer the evidence to show that the Defendants were on "notice" that: (1) "their conduct violated the law,"; (2) that "they or people

3

who worked for them intentionally misrepresented material information . . . including information about applicant incomes,"; and (3) that "their recruitment of consumers at homeless centers could be problematic." Thus, the Government does not contend that the specified complaints, suspensions, or terminations served as an "integral" part of the crime or "necessary to complete the story of the crime for the jury." *McLean*, 138 F.3d at 1403.

Aside from the consumer complaints and regulatory actions, the Government also intends to introduce evidence of "both Defendants' involvement in street marketing for ACA plans outside of Florida using the same companies, same employees, and same tactics alleged in the Superseding Indictment and during the same time period." The Government then states that "[t]his is part of the charged conspiracy." [ECF No. 87 at 3]. That is incorrect. The Superseding Indictment makes no explicit reference to out-of-state marketing and, by its terms, is focused on Martin, Broward, Miami-Dade, and Palm Beach Counties. For these reasons, the Government's proffered evidence is not inextricable intertwined with the charged conduct.

### III. The Government's Evidence is Not Admissible Under 404(b) and Should Nonetheless Be Excluded Under Rule 403.

Evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403. *United States v. Edouard*, 485 F.3d. 1324, 1344 (11th Cir. 2007) (*citing United States v. Baker*, 432 F.3d 1189, 1205 n. 9 (11th Cir. 2005). To be admissible, 404(b) evidence "must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must [otherwise] satisfy Rule 403." *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000); *United States v. Matthews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005). The third prong permits the Court to "exclude

relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice relates to the capacity of evidence to "lure the factfinder into declaring guilt on a ground different from the proof specific to the offense charged" and, within the context of Rule 403, it means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172 (1997).

The second prong of the 404(b) analysis— "the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act"—warrants careful consideration with respect to the Government's proposed evidence regarding consumer complaints, CMS suspension letters, CMS termination letters, and DFS Notices of Investigation. This is unlike a case where, for example, the Government seeks to introduce a prior criminal conviction, in which case the second prong of the 404(b) analysis is uncontroversial and readily provable. *See United States v. Green*, 842 F.3d 1299, 1317 (11th Cir. 2016) ("[I]t is elementary that a conviction is sufficient proof that [the defendant] committed the prior act").

As previously explained, the Government argues that the consumer complaints and regulatory discipline put the Defendants "on notice" of various issues in the indictment. But that evidentiary inference is true if, and only if, the consumer complaints and regulatory enforcement actions were well-founded and supported by evidence. In its 404(b) Notice, the Government neglected to mention that CMS' decision to suspend Mr. Lloyd and his colleague was quickly reversed because there was insufficient evidence. On November 4, 2020, CMS emailed Fiorella's Chief Compliance Officer, stating that, "[w]e have found, given the information submitted by you on Mr. Lloyd's behalf, that there is insufficient evidence to determine that the consumers named

5

in the September 4, 2020 suspension notice were enrolled without their authorization or knowledge." Likewise, during the timeframe of the indictment (2018 to 2022), there were countless consumer complaints that were determined to be unfounded, either because Fiorella had recorded calls to prove the legitimacy of the ACA enrollments, or because the consumers lacked credibility.

Thus, in some circumstances, the Government's own discovery disproves that the "[d]efendant[s] committed the act." And, by extension, it undermines the Government's argument that these complaints and regulatory actions put the Defendants "on notice" of wrongdoing. Thus, the evidence is inadmissible because it is not for a "permitted use," as defined in Federal Rule of Evidence 404(b)(2). Nonetheless, if the Court does entertain the Government's proposal to introduce evidence of consumer complaints, suspensions, terminations and audits, then Mr. Lloyd urges the Court to consider evidence from the Government and defense, outside the presence of the jury, including the quantum of proof supporting each complaint and regulatory action, as well as any findings or conclusions reached by CMS or DFS for *each distinct event* described in the Government's Notice.

The prospect of several "mini trials," as described above, also warrants the Court's exclusion of the proffered evidence under Rule 403 because it will lead to "undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. *See Eghnayem v. Bos. Sci. Corp.*, 863 F.3d 1304, 1318 (11th Cir. 2017) (district court did not abuse discretion by excluding evidence that "might have provoked the parties to engage in a time-consuming mini-trial" where the "concerns of prejudice and confusion substantially outweighed the probative value of the evidence"). Allowing the Government to introduce the proposed evidence will result in prolonging this already complex trial with factual disputes over various agency investigations and consumer

complaints.

Moreover, there is a serious risk that Mr. Lloyd will be unduly prejudiced and that the jurors will be confused or misled by the 404(b) evidence because the legal standard for CMS to revoke or suspend an agent's marketplace license is far different than the legal standard to convict Mr. Lloyd of wire fraud. *Compare* 45 CFR §1555.220(g)(1) ("If, in HHS' determination, a specific finding of noncompliance or pattern of noncompliance is sufficiently severe, HHS may terminate an agent's, broker's . . . agreement with the Federally-facilitated Exchange for cause") and 45 C.F.R. § 155.220(g)(5)(i)(A) ("If HHS *reasonably suspects* that an agent, broker, or web-broker may have may have engaged in fraud, or in *abusive conduct* that may cause imminent or ongoing consumer harm using personally identifiable information of an Exchange enrollee or applicant . . . HHS may temporarily suspend the agent's . . . agreements), *with* Superseding Indictment, ECF No. 87, at 9 (the Defendants "did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree . . . others to *knowingly* and with the *intent to defraud*, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises").

**IV.   Conclusion**

For the foregoing reasons, Defendant Cory Lloyd respectfully requests that the Court should exclude the Government's proposed "inextricably intertwined" or 404(b) evidence. Moreover, Mr. Lloyd believes that the 404(b) evidence against Mr. Strong should be excluded as it is likely cause undue, "spillover" prejudice against Mr. Lloyd, especially if the Government is unable to prove that Mr. Lloyd was aware of the disciplinary actions against Mr. Strong.

Dated: October 10, 2025	Respectfully submitted,

        **STUMPHAUZER KOLAYA**
        **NADLER & SLOMAN, PLLC**
        2 South Biscayne Boulevard, Suite 1600
        One Biscayne Tower
        Miami, FL 33131
        Telephone: (305) 614-1400
        Facsimile: (305) 614-1425

        /s/ *Matthew DellaBetta*
        Matthew DellaBetta
        Fla. Bar No. 1031216
        mdellabetta@sknlaw.com

        Ryan K. Stumphauzer
        Fla. Bar No. 12176
        rstumphauzer@sknlaw.com

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for Cory Lloyd has conferred with counsel for the United States, who indicated that the United States opposes the relief requested herein.

        */s/ Matthew DellaBetta*
        Matthew DellaBetta

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, causing a copy of the foregoing document to be served on all counsel of record via Notice of Electronic Filing.

*/s/ Matthew DellaBetta*
Matthew DellaBetta