UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cr-80015-DMM

UNITED STATES OF AMERICA

v.

CORY LLOYD and
STEVEN STRONG,

          **Defendants**.

_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANTS CORY LLOYD'S AND STEVEN STRONG'S MOTIONS *IN LIMINE* TO EXCLUDE OR LIMIT EXPERT AND LAY TESTIMONY OF EMILY PEDNEAU, RAY WENGER, AND TONYALEAH VELTKAMP

      The United States respectfully opposes the motions of Defendants Cory Lloyd and Steven Strong to exclude expert testimony.  [D.E. 102 and 105].  Defendants each move to exclude or limit the testimony of three government witnesses—Emily Pedneau, Ray Wenger, and Tonyaleah Veltkamp—whose testimony will help the jury understand the structure, function, and regulatory context of the Affordable Care Act ("ACA"), the Florida Department of Financial Services ("DFS"), and the Florida Medicaid system.  Their testimony is relevant, probative, and admissible under Federal Rules of Evidence 701 and 702.  Each witness draws upon firsthand experience in the administration and oversight of the federal and state programs that the Defendants allegedly exploited to commit healthcare-related fraud.

      The government has provided adequate disclosure and will satisfy its obligations under *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The government's witnesses do not purport to offer legal conclusions or opinions about the Defendants' guilt or states of mind. Rather, they will provide factual and contextual information necessary for the jury to understand

1

how the Defendants' conduct—manipulating Affordable Care Act ("ACA") plan applications, misrepresenting income, and exploiting Medicaid denial processes—violated established program rules and practices and impeded the operation of those programs.

Accordingly, the Motions should be denied in their entirety.

## LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire*, the trial court acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Rule 702 permits a qualified expert to testify if: (1) the expert is competent on the matter; (2) the methodology is reliable; and (3) the testimony assists the trier of fact. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*).

Rule 701, by contrast, allows lay opinion testimony based on a witness's own perception and professional experience, so long as it is not grounded in specialized, scientific knowledge reserved for Rule 702 experts. *See United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002). "'[J]ust because [a lay witness's] position and experience *could* have qualified him for expert witness status does not mean that any testimony he gives at trial is considered 'expert testimony.'" *United States v. Jeri*, 869 F.3d 1247, 1265 (11th Cir. 2017) (quoting *United States v. LeCroy*, 441 F.3d 914, 927 (11th Cir. 2006)). "Lay witnesses may draw on their professional experience to guide their opinions without necessarily being treated as expert witnesses." *Jeri*, 869 F.3d at 1265.

## ARGUMENT

**I.    The Anticipated Testimony of Emily Pedneau Is Admissible Under Rules 701 and 702.**

Ms. Pedneau will be called to discuss the rules and regulations surrounding the ACA. This testimony is necessary for the jury to understand the regulatory framework around the ACA exchange and the place of brokers and agents within the exchange system.

### A. Ms. Pedneau's Testimony Properly Explains Complex ACA and CMS Processes.

Ms. Pedneau's 13 years of experience at the Centers for Medicare & Medicaid Services qualify her to explain the structure and functioning of the ACA Marketplace, eligibility verification, and broker enrollment processes. Such program witness testimony is routinely admitted in healthcare-related cases to help jurors understand regulatory systems that defendants manipulated. *See United States v. Crabtree*, 878 F.3d 1274, 1288-89 (11th Cir. 2018) (district court did not abuse discretion in admitting expert explanation of Medicare coverage and claims systems). Indeed, Ms. Pedneau testified as a program witness in the only other criminal trial the government is aware of relating to fraudulent enrollments in ACA plans. *See United States v. Copeland*, 17-84-BAJ-EWD, D.E. 239 (M.D. La. Sept. 19, 2019).

Defendants claim that any testimony regarding CMS or ACA's regulatory structure is expert testimony, relying on *Willner*, but this is not so. In *Willner*, the Court held that allowing testimony of a contractor who specialized in fraud investigations regarding what Medicare or its contractors *would* do in certain citations or what were proper grounds for a medical test to be ordered was expert testimony and that it was inappropriate *because it had not been properly disclosed*. *United States v. Willner*, 795 F.3d 1297, 1318 (11th Cir. 2015). In this case, much of Ms. Pedneau's disclosed testimony is simply to describe the complex ACA regulatory environment based on her years of work at CMS and to authenticate and introduce certain data and records. Moreover, the government disclosed her testimony in the event certain of it falls under Rule 702, which did not happen in *Willner*.

Ms. Pedneau will not speculate about legislative intent[1] or offer legal conclusions. She will describe factual program operations and industry standards that provide the backdrop for the charged conduct. *See United States v. Toll*, 804 F.3d 1344, 1355 (11th Cir. 2015) ("a 'business owner[ ] or officer[ ]' may provide lay opinion testimony 'because of the particularized knowledge that the witness has by virtue of his or her position in the business.'").

That is precisely the sort of testimony the Eleventh Circuit has deemed admissible because it helps the jury understand the mechanics of a complex government program. *Crabtree*, 878 F.3d at 1288-89.

### B. Ms. Pedneau's Methodology and Opinions Are Reliable and Transparent.

While much of Ms. Pedneau's testimony would be appropriate lay opinion testimony, the government nonetheless noticed her as an expert because some of her opinions may be expert in nature. Thus, the government is not trying to improperly "pass Ms. Pedneau off" as a lay witness. The government gave notice of her potential expert testimony and will seek to qualify her as an expert (if the Court permits the parties to tender witnesses as experts).

Some of Ms. Pedneau's opinions may include expert opinions and those opinions derive from her direct regulatory experience, program-guidance documents, and CMS data systems. The Eleventh Circuit recognizes that "experience in a field may offer another path to expert status" when, as here, the witness applies that experience in a reasoned manner. *Frazier*, 387 F.3d at 1261-62. Her explanations of subsidy qualification requirements, enrollment procedures, verification protocols, and the consequences of inaccurate income data are drawn from the applicable regulatory guidelines and her own experience, not conjecture.

---

[1] Nor should the defense be permitted to ask her questions about legislative intent, or offer its own witnesses on legislative intent.

For instance, Defendants object to Ms. Pedneau's review of recorded calls between Company 1's insurance agents and consumers and her proffered opinion on whether the calls generated information sufficient to make an accurate income projection. This is permissible expert testimony because it applies her years of experience in this exact field to the facts of this case. Ms. Pedneau may review and opine on the call recordings that contain the only source of income information generated to support the ACA plan submissions at issue. The recorded calls she will opine about are the calls associated with the three substantive wire fraud counts. These are not "cherry picked" calls; these calls are tied to specific allegations in the Superseding Indictment. Defendants' insistence that there must be some kind of statistical sampling or comparison to call recordings from other insurance agents in the industry is inapposite—a sampling of other calls or a review of what other insurance agents in the industry did has no bearing on whether the three calls at issue reflect information sufficient to make an income projection as contemplated in the applicable regulations and guidance. Ms. Pedneau will not be opining on "industry standards" or extrapolating her conclusions from these calls to render generalized opinions on the Defendants' conduct.

Defendants object to nearly every aspect of Ms. Pedneau's testimony and instead demand an application of some kind of statistical analysis or scientific experiment. That is not required and Ms. Pedneau's "testimony [is] reliable even though" she did not "do any testing or use 'scientific methods.'" *United States v. Esformes*, 60 F.4th 621, 637 (11th Cir. 2023) ("In some cases, an admissible expert will need rigorous scientific or statistical analysis, but *Daubert* also allows for admitting experts whose methods are less formal, such as when an expert testifies primarily based on experience."); *cf. Willner*, 795 F.3d at 1318 (Medicare program witness testified to opinions based on his experience as a Medicare fraud investigation educator). Here,

Ms. Pedneau is a program witness who will explain a complicated regulatory framework to the jury and will apply her expertise to the facts of this case, which is the type of testimony routinely admitted in criminal fraud cases involving complex regulatory landscapes. *United States v. Ivan Scott*, 19-CR-00209-PGB (M.D. Fla.) (admitted Medicare program witness as an expert and permitted to testify about how Medicare functions, the requirement that Part B services be medically necessary, and the coverage requirements for the services at issue in that case (laboratory testing)); *United States v. Diaz*, 18-CR-20473-COOKE (S.D. Fla.) (admitting Medicare program witness as an expert to testify regarding functioning of Medicare and home health services).

### C. Ms. Pedneau's Testimony Does Not Violate Rule 704(b).

The government will not elicit any opinion from Ms. Pedneau about whether the Defendants "knowingly" or "willfully" violated the law. Rather, she will testify about CMS's communications with LLOYD, STRONG, and Company 1 and the regulatory context showing that the Defendants were on notice of compliance requirements. Expert testimony that provides background evidence does not equate to an opinion on intent.

### D. Any Hybrid Nature of Ms. Pedneau's Testimony Is Proper and Helpful.

The cases Defendants cites regarding impermissible hybrid testimony are inapposite here. These cases pertain to instances where a case agent testified as both an expert (such as in drug dealing jargon) and a summary witness and provided impermissible testimony about this "beliefs about the defendant's conduct based upon his knowledge of the case." *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003). For example, in *United States v. Hawkins*, the case agent who was tendered as an expert to testify regarding drug jargon based on his experience investigating drug dealing offered impermissible lay testimony when he opined on what defendants meant in specific communications. 934 F.3d 1251, 1262 (11th Cir. 2019). Here, none of the government's proposed

6

experts will be trying to tell the jury what the defendants meant when they made a particular statement, nor were they involved in the government's investigation. Thus, the risks created by presenting case agents as both experts and summary witnesses are not present here. Ms. Pedneau's testimony will assist, not mislead, the jury by translating highly technical ACA data and terminology into understandable terms. Rule 403 does not bar relevant, technical background merely because it is detailed.

## II.     The Testimony of Ray Wenger Is Proper and Admissible.

Mr. Wenger's testimony will serve to provide relevant context for the Florida Department of Financial Services insurance licensing framework, which is necessary for the jury to understand because both Defendants were licensed brokers that were acting under the authority of their licenses. As such, they had certain duties and were on notice of certain requirements that bear on their intent.

### A.     Mr. Wenger's Experience Qualifies Him to Explain Florida's Insurance Licensing Framework.

Mr. Wenger has served over 30 years with the Florida Department of Financial Services and routinely trained and supervised enforcement agents. The Eleventh Circuit has upheld the admission of testimony from regulatory officials explaining professional licensing and compliance systems. *See United States v. Jennings*, 599 F.3d 1241, 1249 (11th Cir. 2010) (allowing testimony of "well known" workers compensation licensing and regulatory requirement because it was based on "her work and her familiarity with the regulatory environment."). Mr. Wenger's description of Florida's agent-appointment and licensing process, DFS's oversight authority, and its Code of Ethics will help jurors understand the significance of the defendants' misrepresentations in these areas.

### B. Mr. Wenger's Opinions Are Reliable and Based Upon His Regulatory Expertise.

The defense suggests Mr. Wenger's opinions lack methodology, but his testimony is based on official DFS procedures and statutory frameworks—objective sources well within the scope of Rule 702. As noted above with respect to Ms. Pedneau's testimony, the Eleventh Circuit does not require a peer-reviewed "scientific method" for regulatory testimony. *Kumho Tire*, 526 U.S. at 150. Moreover, Mr. Wenger will not opine on the Defendants' mental state but will explain what DFS regulations required and how agent licensing and appointment processes worked in the relevant timeframe. *See Jennings,* 599 F.3d at 1249.

### C. Discussion of Prior DFS Investigations Is Permissible Background Evidence.

The government will introduce limited evidence of prior DFS inquiries to show context, notice, and motive, not to prove character. *See United States v. Stickel*, 175 Fed. Appx. 47 (11th Cir. 2006) (allowing prior-investigation evidence to establish knowledge and absence of mistake). Mr. Wenger will not offer ultimate opinions about criminality, satisfying Rule 704(b). His factual testimony concerning the existence and scope of licensing reviews is admissible background evidence directly relevant to intent and knowledge.

## III. The Testimony of Tonyaleah Veltkamp Is Properly Admissible.

Tonyaleah Veltkamp's testimony is relevant to describe the Florida Department of Children and Families and its role in administering the Medicaid rules and regulations. The fraud scheme relied on consumers being denied their applications for Medicaid so that they would be eligible for ACA subsidies.

### A. Veltkamp's Testimony Explains Medicaid Operations and Their Relationship to ACA Subsidies.

With 24 years of experience at Florida's Department of Children and Families, including service as Director of Modernization, Ms. Veltkamp is uniquely qualified to explain how Medicaid eligibility determinations and denials operate, how MyACCESS interfaces with CMS, and how those determinations affect a consumer's access to Medicaid benefits. Her testimony will clarify a technical but crucial element of the scheme alleged—namely, that defendants exploited Medicaid denial mechanisms. Courts routinely admit such testimony to provide context in healthcare-related fraud prosecutions. *E.g.*, *Crabtree*, 878 F.3d at 1288 (approving expert explanation of Medicare coverage and claims systems).

Moreover, Ms. Veltkamp will provide factual testimony about specific consumers at issue in this case who were in fact on Medicaid during the relevant time period. She will explain what type of Medicaid coverage they had, and whether that coverage precludes eligibility in ACA plans. This is directly relevant to the allegations in the Superseding Indictment that the Defendants enrolled consumers in ACA plans even when they were already receiving other public assistance such as Medicaid. Ms. Veltkamp will explain that, when a Medicaid recipient becomes enrolled in an ACA plan, the Medicaid plan becomes the secondary payor which means the consumer may face copays or other financial obligations that they would not otherwise have to incur if Medicaid were their primary insurance.

### B. Veltkamp's Opinions Are Based on Sufficient Experience and Reliable Principles.

Ms. Veltkamp's opinions stem from DCF regulatory guidance and her administrative oversight. The Eleventh Circuit holds that reliability may be established through extensive professional experience in the field. *Frazier*, 387 F.3d at 1261. Her testimony about the "Step-by-Step" denial process will show that Defendants' process of answering almost every question on

9

the Medicaid application as "no" would trigger a Medicaid denial, which is essential to showing how the Defendants' use of artificial Medicaid applications subverted the integrity of federal and state systems and impeded the ability of those systems to properly evaluate Medicaid eligibility.

### C. Veltkamp's Testimony Does Not Invade the Province of the Jury.

Ms. Veltkamp will not label the Defendants' conduct as "fraud" or "criminal." She will explain what Medicaid policy required and why certain procedures—such as intentionally triggering denials—violated those administrative standards. Distinguishing factual program rules from legal conclusions preserves the jury's role. *Crabtree*, 878 F.3d at 1287-88 (approving expert explanation of Medicare regulations with limiting instruction that breach of regulations not a crime).

### D. Veltkamp's Testimony's Probative Value Far Exceeds Any Risk of Prejudice.

Because the Defendants' scheme turned on their manipulation of Medicaid and ACA interfaces, the jury cannot fairly evaluate the charges without understanding how those systems operate. Rule 403 favors admission where evidence is essential to comprehension of a complex fraud. The government will present her testimony efficiently and with limiting instructions as necessary.

## IV. The Combined Testimony of the Government's Witnesses Is Necessary, Reliable, and Proper.

Together, Ms. Pedneau, Mr. Wenger, and Ms. Veltkamp provide distinct but complementary perspectives on the federal and state regulatory frameworks at issue. Their testimony will not duplicate but rather clarify each component of the charged conspiracy: CMS and Marketplace enrollment and eligibility (Pedneau), state licensing (Wenger), and Medicaid enrollment and eligibility (Veltkamp).

Cases consistently permit admission of multiple regulatory experts in healthcare-related fraud cases when each addresses a different aspect of program operations. *See, e.g., United States v. Wheat*, --- F. Supp. 3d ---, 2025 WL 2400444, at *8 (N.D. Ga. Aug. 19, 2025) (rejecting motion to exclude cumulative expert testimony on similar issues because "the diversity of professional backgrounds, experiences, and perspectives represented by [] expert witnesses makes exclusion on the basis of cumulativeness inappropriate at this juncture"). The government's disclosures comply with Rule 16(a)(1)(G) and the local rules by summarizing each witness's opinions, the bases for them, qualifications, prior testimony, and publications.

Any remaining concerns about overlap or hybrid testimony can be addressed through standard limiting instructions and cross-examination, not exclusion. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## **CONCLUSION**

For these reasons, the United States respectfully requests that the Court deny Defendant Cory Lloyd's and Strong's Motions in Limine (D.E. 102 and 105) in their entirety and permit the testimony of Emily Pedneau, Ray Wenger, and Tonyaleah Veltkamp, as allowed by the Federal Rules of Evidence and this Court's pretrial orders.

Dated: October 24, 2025                Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

LORINDA LARYEA, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: <u>/s/ D. Keith Clouser</u>
D. Keith Clouser
Florida Special Bar No. A5502882
Trial Attorney

Jamie de Boer
Florida Special Bar No. A5502601
Assistant Chief

United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20005
Tel.: (202) 304-6801 (de Boer)
Tel.: (202) 256-0867 (Clouser)
Jamie.deBoer@usdoj.gov
David.Clouser@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on October 24, 2025, I served and filed the foregoing document with the Clerk of the Court via ECF.

By: <u>/s/ *D. Keith Clouser*</u>
D. KEITH CLOUSER
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section