West's Florida Statutes Annotated
  Title XXXVII. Insurance (Chapters 624-651) (Refs & Annos)
    Chapter 626. Insurance Field Representatives and Operations (Refs & Annos)
      Part IX. Unfair Insurance Trade Practices (Refs & Annos)

West's F.S.A. § 626.9541

626.9541. Unfair methods of competition and unfair or deceptive acts or practices defined

Currentness

**(1) Unfair methods of competition and unfair or deceptive acts.--**The following are defined as unfair methods of competition and unfair or deceptive acts or practices:

(a) *Misrepresentations and false advertising of insurance policies.*--Knowingly making, issuing, circulating, or causing to be made, issued, or circulated, any estimate, illustration, circular, statement, sales presentation, omission, comparison, or property and casualty certificate of insurance altered after being issued, which:

1. Misrepresents the benefits, advantages, conditions, or terms of any insurance policy.

2. Misrepresents the dividends or share of the surplus to be received on any insurance policy.

3. Makes any false or misleading statements as to the dividends or share of surplus previously paid on any insurance policy.

4. Is misleading, or is a misrepresentation, as to the financial condition of any person or as to the legal reserve system upon which any life insurer operates.

5. Uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof.

6. Is a misrepresentation for the purpose of inducing, or tending to induce, the lapse, forfeiture, exchange, conversion, or surrender of any insurance policy.

7. Is a misrepresentation for the purpose of effecting a pledge or assignment of, or effecting a loan against, any insurance policy.

8. Misrepresents any insurance policy as being shares of stock or misrepresents ownership interest in the company.

9. Uses any advertisement that would mislead or otherwise cause a reasonable person to believe mistakenly that the state or the Federal Government is responsible for the insurance sales activities of any person or stands behind any person's credit or that any person, the state, or the Federal Government guarantees any returns on insurance products or is a source of payment of any insurance obligation of or sold by any person.

10. Fails to disclose a third party that receives royalties, referral fees, or other remuneration for sponsorship, marketing, or use of third-party branding for a policy of health insurance as defined in s. 624.603.

(b) *False information and advertising generally.*--Knowingly making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public:

1. In a newspaper, magazine, or other publication,

2. In the form of a notice, circular, pamphlet, letter, or poster,

3. Over any radio or television station, or

4. In any other way,

an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance, which is untrue, deceptive, or misleading.

(c) *Defamation.*--Knowingly making, publishing, disseminating, or circulating, directly or indirectly, or aiding, abetting, or encouraging the making, publishing, disseminating, or circulating of, any oral or written statement, or any pamphlet, circular, article, or literature, which is false or maliciously critical of, or derogatory to, any person and which is calculated to injure such person.

(d) *Boycott, coercion, and intimidation.*--Entering into any agreement to commit, or by any concerted action committing, any act of boycott, coercion, or intimidation resulting in, or tending to result in, unreasonable restraint of, or monopoly in, the business of insurance.

(e) *False statements and entries.*--

1. Knowingly:

a. Filing with any supervisory or other public official,

b. Making, publishing, disseminating, circulating,

c. Delivering to any person,

d. Placing before the public,

e. Causing, directly or indirectly, to be made, published, disseminated, circulated, delivered to any person, or placed before the public,

any false material statement.

2. Knowingly making any false entry of a material fact in any book, report, or statement of any person, or knowingly omitting to make a true entry of any material fact pertaining to the business of such person in any book, report, or statement of such person.

(f) *Stock operations and advisory board contracts.*--Issuing or delivering, promising to issue or deliver, or permitting agents, officers, or employees to issue or deliver, agency company stock or other capital stock, benefit certificates or shares in any common-law corporation, or securities or any special or advisory board contracts or other contracts of any kind promising returns or profits as an inducement to insurance.

(g) *Unfair discrimination.*--

1. Knowingly making or permitting unfair discrimination between individuals of the same actuarially supportable class and equal expectation of life, in the rates charged for a life insurance or annuity contract, in the dividends or other benefits payable thereon, or in any other term or condition of such contract.

2. Knowingly making or permitting unfair discrimination between individuals of the same actuarially supportable class, as determined at the time of initial issuance of the coverage, and essentially the same hazard, in the amount of premium, policy fees, or rates charged for a policy or contract of accident, disability, or health insurance, in the benefits payable thereunder, in the terms or conditions of such contract, or in any other manner.

3. For a health insurer, life insurer, disability insurer, property and casualty insurer, automobile insurer, or managed care provider to underwrite a policy, or refuse to issue, reissue, or renew a policy, refuse to pay a claim, cancel or otherwise terminate a policy, or increase rates based upon the fact that an insured or applicant who is also the proposed insured has made a claim or sought or should have sought medical or psychological treatment in the past for abuse, protection from abuse, or shelter from abuse, or that a claim was caused in the past by, or might occur as a result of, any future assault, battery, or sexual assault by a family or household member upon another family or household member as defined in s. 741.28. A health insurer, life insurer, disability insurer, or managed care provider may refuse to underwrite, issue, or renew a policy based on the applicant's medical condition, but may not consider whether such condition was caused by an act of abuse. For purposes of this section, the term "abuse" means the occurrence of one or more of the following acts:

a. Attempting or committing assault, battery, sexual assault, or sexual battery;

b. Placing another in fear of imminent serious bodily injury by physical menace;

c. False imprisonment;

d. Physically or sexually abusing a minor child; or

e. An act of domestic violence as defined in s. 741.28.

This subparagraph does not prohibit a property and casualty insurer or an automobile insurer from excluding coverage for intentional acts by the insured if such exclusion is not an act of unfair discrimination as defined in this paragraph.

4. For a personal lines property or personal lines automobile insurer to:

a. Refuse to issue, reissue, or renew a policy; cancel or otherwise terminate a policy; or charge an unfairly discriminatory rate in this state based on the lawful use, possession, or ownership of a firearm or ammunition by the insurance applicant, insured, or a household member of the applicant or insured. This sub-subparagraph does not prevent an insurer from charging a supplemental premium that is not unfairly discriminatory for a separate rider voluntarily requested by the insurance applicant to insure a firearm or a firearm collection whose value exceeds the standard policy coverage.

b. Disclose the lawful ownership or possession of firearms of an insurance applicant, insured, or household member of the applicant or insured to a third party or an affiliated entity of the insurer unless the insurer discloses to the applicant or insured the specific need to disclose the information and the applicant or insured expressly consents to the disclosure, or the disclosure is necessary to quote or bind coverage, continue coverage, or adjust a claim. For purposes of underwriting and issuing insurance coverage, this sub-subparagraph does not prevent the sharing of information between an insurance company and its licensed insurance agent if a separate rider has been voluntarily requested by the policyholder or prospective policyholder to insure a firearm or a firearm collection whose value exceeds the standard policy coverage.

(h) *Unlawful rebates.*--

1. Except as otherwise expressly provided by law, or in an applicable filing with the office, knowingly:

a. Permitting, or offering to make, or making, any contract or agreement as to such contract other than as plainly expressed in the insurance contract issued thereon;

b. Paying, allowing, or giving, or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance contract, any unlawful rebate of premiums payable on the contract, any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract;

c. Giving, selling, or purchasing, or offering to give, sell, or purchase, as inducement to such insurance contract or in connection therewith, any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits accrued thereon, or anything of value whatsoever not specified in the insurance contract.

2. Nothing in paragraph (g) or subparagraph 1. of this paragraph shall be construed as including within the definition of discrimination or unlawful rebates:

a. In the case of any contract of life insurance or life annuity, paying bonuses to all policyholders or otherwise abating their premiums in whole or in part out of surplus accumulated from nonparticipating insurance; provided that any such bonuses or abatement of premiums is fair and equitable to all policyholders and for the best interests of the company and its policyholders.

b. In the case of life insurance policies issued on the industrial debit plan, making allowance to policyholders who have continuously for a specified period made premium payments directly to an office of the insurer in an amount which fairly represents the saving in collection expenses.

c. Readjustment of the rate of premium for a group insurance policy based on the loss or expense thereunder, at the end of the first or any subsequent policy year of insurance thereunder, which may be made retroactive only for such policy year.

d. Issuance of life insurance policies or annuity contracts at rates less than the usual rates of premiums for such policies or contracts, as group insurance or employee insurance as defined in this code.

e. Issuing life or disability insurance policies on a salary savings, bank draft, preauthorized check, payroll deduction, or other similar plan at a reduced rate reasonably related to the savings made by the use of such plan.

3. a. No title insurer, or any member, employee, attorney, agent, or agency thereof, shall pay, allow, or give, or offer to pay, allow, or give, directly or indirectly, as inducement to title insurance, or after such insurance has been effected, any rebate or abatement of the premium or any other charge or fee, or provide any special favor or advantage, or any monetary consideration or inducement whatever.

b. Nothing in this subparagraph shall be construed as prohibiting the payment of fees to attorneys at law duly licensed to practice law in the courts of this state, for professional services, or as prohibiting the payment of earned portions of the premium to duly appointed agents or agencies who actually perform services for the title insurer. Nothing in this subparagraph shall be construed as prohibiting a rebate or abatement of an attorney fee charged for professional services, or that portion of the premium that is not required to be retained by the insurer pursuant to s. 627.782(1), or any other agent charge or fee to the person responsible for paying the premium, charge, or fee.

c. No insured named in a policy, or any other person directly or indirectly connected with the transaction involving the issuance of such policy, including, but not limited to, any mortgage broker, real estate broker, builder, or attorney, any employee, agent, agency, or representative thereof, or any other person whatsoever, shall knowingly receive or accept, directly or indirectly, any rebate or abatement of any portion of the title insurance premium or of any other charge or fee or any monetary consideration or inducement whatsoever, except as set forth in sub-subparagraph b.; provided, in no event shall any portion of the attorney fee, any portion of the premium that is not required to be retained by the insurer pursuant to s. 627.782(1), any agent charge or fee, or any other monetary consideration or inducement be paid directly or indirectly for the referral of title insurance business.

4. a. Paragraph (g) or subparagraph 1. may not be construed as including within the definition of unfair discrimination or unlawful rebates the offer or provision by a life or health insurer or a life or health agent of the life or health insurer, including by or through an employee, an affiliate, or a third-party representative, of a value-added product or service at no or reduced cost when such product or service is not specified in the life or health insurance policy, if the product or service relates to the insurance coverage and is primarily designed to do one or more of the following:

(I) Provide loss mitigation or loss control;

(II) Reduce claim costs or claim settlement costs;

(III) Provide education about liability risks or risk of loss to persons or property;

(IV) Monitor or assess risk, identify sources of risk, or develop strategies for eliminating or reducing risk;

(V) Enhance health;

(VI) Enhance financial wellness through items such as education or financial planning services;

(VII) Provide post-loss services;

(VIII) Incentivize behavioral changes to improve the health or reduce the risk of death or disability of a policyholder, potential policyholder, certificateholder, potential certificateholder, insured, potential insured, or applicant; or

(IX) Assist in the administration of employee or retiree benefit insurance coverage.

b. The cost to the life or health insurer or life or health agent offering the product or service to a customer must be reasonable in comparison to the customer's premiums or life or health insurance coverage for the policy class.

c. If the life or health insurer or life or health agent is providing the product or service, the life or health insurer or life or health agent must ensure that the customer is provided with contact information to assist the customer with questions regarding the product or service.

d. The availability of the product or service must be based on documented objective evidence, and the product or service must be offered in a manner that is not unfairly discriminatory. The documented evidence must be maintained by the life or health insurer or life or health agent and produced upon request by the office or the department.

e. If a life or health insurer or life or health agent has a good faith belief, but does not have sufficient evidence to demonstrate, that the product or service meets any of the criteria in sub-sub-subparagraphs a.(I)-(IX), the life or health insurer or life or health agent may provide the product or service in a manner that is not unfairly discriminatory as part of a pilot or testing program for up to 1 year. The life or health insurer or life or health agent must notify the office or department, as applicable, of such pilot or testing program offered to consumers in this state before commencing the program. The life or health insurer or life or health agent may commence the program unless the office or department, as applicable, objects to the program within 21 days after receiving the notice.

f. A life or health insurer, life or health agent, or representative thereof may not offer or provide life or health insurance as an inducement to the purchase of another policy or otherwise use the words "free," "no cost," or similar words in an advertisement.

g. The commission may adopt rules to administer this subparagraph to ensure consumer protection. Such rules, consistent with applicable law, may address, among other issues, consumer data protections and privacy, consumer disclosure, and unfair discrimination.

(i) *Unfair claim settlement practices.--*

1. Attempting to settle claims on the basis of an application, when serving as a binder or intended to become a part of the policy, or any other material document which was altered without notice to, or knowledge or consent of, the insured;

2. A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy;

3. Committing or performing with such frequency as to indicate a general business practice any of the following:

a. Failing to adopt and implement standards for the proper investigation of claims;

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c. Failing to acknowledge and act promptly upon communications with respect to claims;

d. Denying claims without conducting reasonable investigations based upon available information;

e. Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;

f. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

g. Failing to promptly notify the insured of any additional information necessary for the processing of a claim;

h. Failing to clearly explain the nature of the requested information and the reasons why such information is necessary;

i. Failing to pay personal injury protection insurance claims within the time periods required by s. 627.736(4)(b). The office may order the insurer to pay restitution to a policyholder, medical provider, or other claimant, including interest at a rate consistent with the amount set forth in s. 55.03(1), for the time period within which an insurer fails to pay claims as required by law. Restitution is in addition to any other penalties allowed by law, including, but not limited to, the suspension of the insurer's certificate of authority; or

j. Altering or amending an insurance adjuster's report without:

(I) Providing a detailed explanation as to why any change that has the effect of reducing the estimate of the loss was made; and

(II) Including on the report or as an addendum to the report a detailed list of all changes made to the report and the identity of the person who ordered each change; or

(III) Retaining all versions of the report, and including within each such version, for each change made within such version of the report, the identity of each person who made or ordered such change; or

4. Failing to pay undisputed amounts of partial or full benefits owed under first-party property insurance policies within 60 days after an insurer receives notice of a residential property insurance claim, determines the amounts of partial or full benefits, and agrees to coverage, unless payment of the undisputed benefits is prevented by factors beyond the control of the insurer as defined in s. 627.70131(5).

(j) *Failure to maintain complaint-handling procedures.*--Failure of any person to maintain a complete record of all the complaints received since the date of the last examination. For purposes of this paragraph, "complaint" means any written communication primarily expressing a grievance.

(k) *Misrepresentation in insurance applications.*--

1. Knowingly making a false or fraudulent written or oral statement or representation on, or relative to, an application or negotiation for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual.

2. Knowingly making a material omission in the comparison of a life, health, or Medicare supplement insurance replacement policy with the policy it replaces for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual. For the purposes of this subparagraph, a material omission includes the failure to advise the insured of the existence and operation of a preexisting condition clause in the replacement policy.

(*l*) *Twisting.*--Knowingly making any misleading representations or incomplete or fraudulent comparisons or fraudulent material omissions of or with respect to any insurance policies or insurers for the purpose of inducing, or tending to induce, any person to lapse, forfeit, surrender, terminate, retain, pledge, assign, borrow on, or convert any insurance policy or to take out a policy of insurance in another insurer.

(m) *Advertising and promotional gifts and charitable contributions permitted.*--

1. The provisions of paragraph (f), paragraph (g), or paragraph (h) do not prohibit a licensed insurer or its agent from:

a. Giving to insureds, prospective insureds, or others any article of merchandise, goods, wares, store gift cards, gift certificates, event tickets, anti-fraud or loss mitigation services, or other items having a total value of $100 or less per insured or prospective insured in any calendar year.

b. Making charitable contributions, as defined in s. 170(c) of the Internal Revenue Code, on behalf of insureds or prospective insureds, of up to $100 per insured or prospective insured in any calendar year.

2. The provisions of paragraph (f), paragraph (g), or paragraph (h) do not prohibit a title insurance agent or title insurance agency, as those terms are defined in s. 626.841, or a title insurer, as defined in s. 627.7711, from giving to insureds, prospective insureds, or others, for the purpose of advertising, any article of merchandise having a value of not more than $25. A person or entity governed by this subparagraph is not subject to subparagraph 1.

(n) *Free insurance prohibited.*--

1. Advertising, offering, or providing free insurance as an inducement to the purchase or sale of real or personal property or of services directly or indirectly connected with such real or personal property.

2. For the purposes of this paragraph, "free" insurance is:

a. Insurance for which no identifiable and additional charge is made to the purchaser of such real property, personal property, or services.

b. Insurance for which an identifiable or additional charge is made in an amount less than the cost of such insurance as to the seller or other person, other than the insurer, providing the same.

3. Subparagraphs 1. and 2. do not apply to:

a. Insurance of, loss of, or damage to the real or personal property involved in any such sale or services, under a policy covering the interests therein of the seller or vendor.

b. Blanket disability insurance as defined in s. 627.659.

c. Credit life insurance or credit disability insurance.

d. Any individual, isolated, nonrecurring unadvertised transaction not in the regular course of business.

e. Title insurance.

f. Any purchase agreement involving the purchase of a cemetery lot or lots in which, under stated conditions, any balance due is forgiven upon the death of the purchaser.

g. Life insurance, trip cancellation insurance, or lost baggage insurance offered by a travel agency as part of a travel package offered by and booked through the agency.

4. Using the word "free" or words which imply the provision of insurance without a cost to describe life or disability insurance, in connection with the advertising or offering for sale of any kind of goods, merchandise, or services.

(*o*) *Illegal dealings in premiums; excess or reduced charges for insurance.*--

1. Knowingly collecting any sum as a premium or charge for insurance, which is not then provided, or is not in due course to be provided, subject to acceptance of the risk by the insurer, by an insurance policy issued by an insurer as permitted by this code.

2. Knowingly collecting as a premium or charge for insurance any sum in excess of or less than the premium or charge applicable to such insurance, in accordance with the applicable classifications and rates as filed with and approved by the office, and as specified in the policy; or, in cases when classifications, premiums, or rates are not required by this code to be so filed and approved, premiums and charges collected from a Florida resident in excess of or less than those specified in the policy and as fixed by the insurer. Notwithstanding any other provision of law, this provision shall not be deemed to prohibit the charging and collection, by surplus lines agents licensed under part VIII of this chapter, of the amount of applicable state and federal taxes, or fees as authorized by s. 626.916(2), in addition to the premium required by the insurer or the charging and collection, by licensed agents, of the exact amount of any discount or other such fee charged by a credit card facility in connection with the use of a credit card, as authorized by subparagraph (q)3., in addition to the premium required by the insurer. This subparagraph shall not be construed to prohibit collection of a premium for a universal life or a variable or indeterminate value insurance policy made in accordance with the terms of the contract.

3. a. Imposing or requesting an additional premium for a policy of motor vehicle liability, personal injury protection, medical payment, or collision insurance or any combination thereof or refusing to renew the policy solely because the insured was involved in a motor vehicle accident unless the insurer's file contains information from which the insurer in good faith determines that the insured was substantially at fault in the accident.

b. An insurer which imposes and collects such a surcharge or which refuses to renew such policy shall, in conjunction with the notice of premium due or notice of nonrenewal, notify the named insured that he or she is entitled to reimbursement of such amount or renewal of the policy under the conditions listed below and will subsequently reimburse him or her or renew the policy, if the named insured demonstrates that the operator involved in the accident was:

(I) Lawfully parked;

(II) Reimbursed by, or on behalf of, a person responsible for the accident or has a judgment against such person;

(III) Struck in the rear by another vehicle headed in the same direction and was not convicted of a moving traffic violation in connection with the accident;

(IV) Hit by a "hit-and-run" driver, if the accident was reported to the proper authorities within 24 hours after discovering the accident;

(V) Not convicted of a moving traffic violation in connection with the accident, but the operator of the other automobile involved in such accident was convicted of a moving traffic violation;

(VI) Finally adjudicated not to be liable by a court of competent jurisdiction;

(VII) In receipt of a traffic citation which was dismissed or nolle prossed; or

(VIII) Not at fault as evidenced by a written statement from the insured establishing facts demonstrating lack of fault which are not rebutted by information in the insurer's file from which the insurer in good faith determines that the insured was substantially at fault.

c. In addition to the other provisions of this subparagraph, an insurer may not fail to renew a policy if the insured has had only one accident in which he or she was at fault within the current 3-year period. However, an insurer may nonrenew a policy for reasons other than accidents in accordance with s. 627.728. This subparagraph does not prohibit nonrenewal of a policy under which the insured has had three or more accidents, regardless of fault, during the most recent 3-year period.

4. Imposing or requesting an additional premium for, or refusing to renew, a policy for motor vehicle insurance solely because the insured committed a noncriminal traffic infraction as described in s. 318.14 unless the infraction is:

a. A second infraction committed within an 18-month period, or a third or subsequent infraction committed within a 36-month period.

b. A violation of s. 316.183, when such violation is a result of exceeding the lawful speed limit by more than 15 miles per hour.

5. Upon the request of the insured, the insurer and licensed agent shall supply to the insured the complete proof of fault or other criteria which justifies the additional charge or cancellation.

6. No insurer shall impose or request an additional premium for motor vehicle insurance, cancel or refuse to issue a policy, or refuse to renew a policy because the insured or the applicant is a handicapped or physically disabled person, so long as such handicap or physical disability does not substantially impair such person's mechanically assisted driving ability.

7. No insurer may cancel or otherwise terminate any insurance contract or coverage, or require execution of a consent to rate endorsement, during the stated policy term for the purpose of offering to issue, or issuing, a similar or identical contract or coverage to the same insured with the same exposure at a higher premium rate or continuing an existing contract or coverage with the same exposure at an increased premium.

8. No insurer may issue a nonrenewal notice on any insurance contract or coverage, or require execution of a consent to rate endorsement, for the purpose of offering to issue, or issuing, a similar or identical contract or coverage to the same insured at a higher premium rate or continuing an existing contract or coverage at an increased premium without meeting any applicable notice requirements.

9. No insurer shall, with respect to premiums charged for motor vehicle insurance, unfairly discriminate solely on the basis of age, sex, marital status, or scholastic achievement.

10. Imposing or requesting an additional premium for motor vehicle comprehensive or uninsured motorist coverage solely because the insured was involved in a motor vehicle accident or was convicted of a moving traffic violation.

11. No insurer shall cancel or issue a nonrenewal notice on any insurance policy or contract without complying with any applicable cancellation or nonrenewal provision required under the Florida Insurance Code.

12. No insurer shall impose or request an additional premium, cancel a policy, or issue a nonrenewal notice on any insurance policy or contract because of any traffic infraction when adjudication has been withheld and no points have been assessed pursuant to s. 318.14(9) and (10). However, this subparagraph does not apply to traffic infractions involving accidents in which the insurer has incurred a loss due to the fault of the insured.

(p) *Insurance cost specified in "price package".--*

1. When the premium or charge for insurance of or involving such property or merchandise is included in the overall purchase price or financing of the purchase of merchandise or property, the vendor or lender shall separately state and identify the amount charged and to be paid for the insurance, and the classifications, if any, upon which based; and the inclusion or exclusion of the cost of insurance in such purchase price or financing shall not increase, reduce, or otherwise affect any other factor involved in the cost of the merchandise, property, or financing as to the purchaser or borrower.

2. This paragraph does not apply to transactions which are subject to the provisions of part I of chapter 520, entitled "The Motor Vehicle Sales Finance Act."

3. This paragraph does not apply to credit life or credit disability insurance which is in compliance with s. 627.681(4).

(q) *Certain insurance transactions through credit card facilities prohibited.--*

1. Except as provided in subparagraph 3., no person shall knowingly solicit or negotiate insurance; seek or accept applications for insurance; issue or deliver any policy; receive, collect, or transmit premiums, to or for an insurer; or otherwise transact insurance

in this state, or relative to a subject of insurance resident, located, or to be performed in this state, through the arrangement or facilities of a credit card facility or organization, for the purpose of insuring credit card holders or prospective credit card holders. The term "credit card holder" as used in this paragraph means a person who may pay the charge for purchases or other transactions through the credit card facility or organization, whose credit with such facility or organization is evidenced by a credit card identifying such person as being one whose charges the credit card facility or organization will pay, and who is identified as such upon the credit card by name, account number, symbol, insignia, or other method or device of identification. This subparagraph does not apply as to health insurance or to credit life, credit disability, or credit property insurance.

2. If any person does or performs in this state any of the acts in violation of subparagraph 1. for or on behalf of an insurer or credit card facility, such insurer or credit card facility shall be deemed to be doing business in this state and, if an insurer, shall be subject to the same state, county, and municipal taxes as insurers that have been legally qualified and admitted to do business in this state by agents or otherwise are subject, the same to be assessed and collected against such insurers; and such person so doing or performing any of such acts is personally liable for all such taxes.

3. A licensed agent or insurer may solicit or negotiate insurance; seek or accept applications for insurance; issue or deliver any policy; receive, collect, or transmit premiums, to or for an insurer; or otherwise transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, through the arrangement or facilities of a credit card facility or organization, for the purpose of insuring credit card holders or prospective credit card holders if:

a. The insurance or policy which is the subject of the transaction is noncancelable by any person other than the named insured, the policyholder, or the insurer;

b. Any refund of unearned premium is made to the credit card holder by mail or electronic transfer; and

c. The credit card transaction is authorized by the signature of the credit card holder or other person authorized to sign on the credit card account.

The conditions enumerated in sub-subparagraphs a.-c. do not apply to health insurance or to credit life, credit disability, or credit property insurance; and sub-subparagraph c. does not apply to property and casualty insurance if the transaction is authorized by the insured.

4. No person may use or disclose information resulting from the use of a credit card in conjunction with the purchase of insurance if such information is to the advantage of the credit card facility or an insurance agent, or is to the detriment of the insured or any other insurance agent; except that this provision does not prohibit a credit card facility from using or disclosing such information in a judicial proceeding or consistent with applicable law on credit reporting.

5. Such insurance may not be sold through a credit card facility in conjunction with membership in any automobile club. The term "automobile club" means a legal entity that, in consideration of dues, assessments, or periodic payments of money, promises its members or subscribers to assist them in matters relating to the ownership, operation, use, or maintenance of a motor vehicle; however, the term does not include persons, associations, or corporations that are organized and operated solely for the purpose of conducting, sponsoring, or sanctioning motor vehicle races, exhibitions, or contests upon racetracks, or upon race courses established and marked as such for the duration of such particular event. The words "motor vehicle" used herein shall be the same as defined in chapter 320.

(r) *Interlocking ownership and management.--*

1. Any domestic insurer may retain, invest in, or acquire the whole or any part of the capital stock of any other insurer or insurers, or have a common management with any other insurer or insurers, unless such retention, investment, acquisition, or common management is inconsistent with any other provision of this code, or unless by reason thereof the business of such insurers with the public is conducted in a manner which substantially lessens competition generally in the insurance business.

2. Any person otherwise qualified may be a director of two or more domestic insurers which are competitors, unless the effect thereof is substantially to lessen competition between insurers generally or materially tend to create a monopoly.

3. Any limitation contained in this paragraph does not apply to any person who is a director of two or more insurers under common control or management.

(s) *Prohibited arrangements as to funerals.--*

1. No life insurer shall designate in any life insurance policy the person to conduct the funeral of the insured, or organize, promote, or operate any enterprise or plan to enter into any contract with any insured under which the freedom of choice in the open market of the person having the legal right to such choice is restricted as to the purchase, arrangement, and conduct of a funeral service or any part thereof for any individual insured by the insurer. No life insurer shall designate in any life insurance policy the person to conduct the funeral of the insured as the owner of the policy.

2. No insurer shall contract or agree to furnish funeral merchandise or services in connection with the disposition of any person upon the death of any person insured by such insurer.

3. No insurer shall contract or agree with any funeral director or direct disposer to the effect that such funeral director or direct disposer shall conduct the funeral of any person insured by such insurer.

4. No insurer shall provide, in any insurance contract covering the life of any person in this state, for the payment of the proceeds or benefits thereof in other than legal tender of the United States and of this state, or for the withholding of such proceeds or benefits, all for the purpose of either directly or indirectly providing, inducing, or furthering any arrangement or agreement designed to require or induce the employment of a particular person to conduct the funeral of the insured.

(t) *Certain life insurance relations with funeral directors prohibited.--*

1. No life insurer shall permit any funeral director or direct disposer to act as its representative, adjuster, claim agent, special claim agent, or agent for such insurer in soliciting, negotiating, or effecting contracts of life insurance on any plan or of any nature issued by such insurer or in collecting premiums for holders of any such contracts except as prescribed in s. 626.785(3).

2. No life insurer shall:

a. Affix, or permit to be affixed, advertising matter of any kind or character of any licensed funeral director or direct disposer to such policies of insurance.

b. Circulate, or permit to be circulated, any such advertising matter with such insurance policies.

c. Attempt in any manner or form to influence policyholders of the insurer to employ the services of any particular licensed funeral director or direct disposer.

3. No such insurer shall maintain, or permit its agent to maintain, an office or place of business in the office, establishment, or place of business of any funeral director or direct disposer in this state.

(u) *False claims; obtaining or retaining money dishonestly.*--

1. Any agent, physician, claimant, or other person who causes to be presented to any insurer a false claim for payment, knowing the same to be false; or

2. Any agent, collector, or other person who represents any insurer or collects or does business without the authority of the insurer, secures cash advances by false statements, or fails to turn over when required, or satisfactorily account for, all collections of such insurer,

shall, in addition to the other penalties provided in this act, be guilty of a misdemeanor of the second degree and, upon conviction thereof, shall be subject to the penalties provided by s. 775.082 or s. 775.083.

(v) *Proposal required.*--If a person simultaneously holds a securities license and a life insurance license, he or she shall prepare and leave with each prospective buyer a written proposal, on or before delivery of any investment plan. "Investment plan" means a mutual funds program, and the proposal shall consist of a prospectus describing the investment feature and a full illustration of any life insurance feature. The proposal shall be prepared in duplicate, dated, and signed by the licensee. The original shall be left with the prospect, the duplicate shall be retained by the licensee for a period of not less than 3 years, and a copy shall be furnished to the department upon its request. In lieu of a duplicate copy, a receipt for standardized proposals filed with the department may be obtained and held by the licensee.

(w) *Soliciting or accepting new or renewal insurance risks by insolvent or impaired insurer or receipt of certain bonuses by an officer or director of an insolvent insurer prohibited; penalty.*--

1. Whether or not delinquency proceedings as to the insurer have been or are to be initiated, but while such insolvency or impairment exists, no director or officer of an insurer, except with the written permission of the office, shall authorize or permit the insurer to solicit or accept new or renewal insurance risks in this state after such director or officer knew, or reasonably should have known, that the insurer was insolvent or impaired.

2. Regardless of whether delinquency proceedings as to the insurer have been or are to be initiated, but while such insolvency or impairment exists, a director or an officer of an impaired insurer may not receive a bonus from such insurer, nor may such

director or officer receive a bonus from a holding company or an affiliate that shares common ownership or control with such insurer.

3. As used in this paragraph, the term:

a. "Bonus" means a payment, in addition to an officer's or a director's usual compensation, which is in addition to any amounts contracted for or otherwise legally due.

b. "Impaired" includes impairment of capital or surplus, as defined in s. 631.011(12) and (13).

4. Any such director or officer, upon conviction of a violation of this paragraph, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(x) *Refusal to insure.*--In addition to other provisions of this code, the refusal to insure, or continue to insure, any individual or risk solely because of:

1. Race, color, creed, marital status, sex, or national origin;

2. The residence, age, or lawful occupation of the individual or the location of the risk, unless there is a reasonable relationship between the residence, age, or lawful occupation of the individual or the location of the risk and the coverage issued or to be issued;

3. The insured's or applicant's failure to agree to place collateral business with any insurer, unless the coverage applied for would provide liability coverage which is excess over that provided in policies maintained on property or motor vehicles;

4. The insured's or applicant's failure to purchase noninsurance services or commodities, including motor vehicle services as defined in s. 624.124 except for motor vehicle services purchased from a membership organization that, as of January 1, 2018, is affiliated with an admitted property and casualty insurer;

5. The fact that the insured or applicant is a public official; or

6. The fact that the insured or applicant had been previously refused insurance coverage by any insurer, when such refusal to insure or continue to insure for this reason occurs with such frequency as to indicate a general business practice.

(y) *Powers of attorney.*--Except as provided in s. 627.842(2):

1. Requiring, as a condition to the purchase or continuation of an insurance policy, that an applicant for insurance or an insured execute a power of attorney in favor of an insurance agent or agency or employee thereof; or

2. Presenting to the applicant or the insured, as a routine business practice, a form that authorizes the insurance agent or agency to sign the applicant's or insured's name on any insurance-related document or application for the purchase of motor vehicle services as described in s. 624.124. To be valid, a power of attorney must be an act or practice other than as described in this paragraph, must be a separate writing in a separate document, must be executed with the full knowledge and consent of the applicant or insured who grants the power of attorney, must be in the best interests of the insured or applicant, and a copy of the power of attorney must be provided to the applicant or insured at the time of the transaction.

(z) *Sliding*.--Sliding is the act or practice of any of the following:

1. Representing to the applicant that a specific ancillary coverage or product is required by law in conjunction with the purchase of insurance when such coverage or product is not required.

2. Representing to the applicant that a specific ancillary coverage or product is included in the policy applied for without an additional charge when such charge is required.

3. Charging an applicant for a specific ancillary coverage or product, in addition to the cost of the insurance coverage applied for, without the informed consent of the applicant.

4. Initiating, effectuating, binding, or otherwise issuing a policy of insurance without the prior informed consent of the owner of the property to be insured.

5. Mailing, transmitting, or otherwise submitting by any means an invoice for premium payment to a mortgagee or escrow agent, for the purpose of effectuating an insurance policy, without the prior informed consent of the owner of the property to be insured. However, this subparagraph does not apply in cases in which the mortgagee or escrow agent is renewing insurance or issuing collateral protection insurance, as defined in s. 624.6085, pursuant to the mortgage or other pertinent loan documents or communications regarding the property.

(aa) *Churning*.--

1. Churning is the practice whereby policy values in an existing life insurance policy or annuity contract, including, but not limited to, cash, loan values, or dividend values, and in any riders to that policy or contract, are directly or indirectly used to purchase another insurance policy or annuity contract with that same insurer for the purpose of earning additional premiums, fees, commissions, or other compensation:

a. Without an objectively reasonable basis for believing that the replacement or extraction will result in an actual and demonstrable benefit to the policyholder;

b. In a fashion that is fraudulent, deceptive, or otherwise misleading or that involves a deceptive omission;

c. When the applicant is not informed that the policy values including cash values, dividends, and other assets of the existing policy or contract will be reduced, forfeited, or used in the purchase of the replacing or additional policy or contract, if this is the case; or

d. Without informing the applicant that the replacing or additional policy or contract will not be a paid-up policy or that additional premiums will be due, if this is the case.

Churning by an insurer or an agent is an unfair method of competition and an unfair or deceptive act or practice.

2. Each insurer shall comply with sub-subparagraphs 1.c. and 1.d. by disclosing to the applicant at the time of the offer on a form designed and adopted by rule by the commission if, how, and the extent to which the policy or contract values (including cash value, dividends, and other assets) of a previously issued policy or contract will be used to purchase a replacing or additional policy or contract with the same insurer. The form must include disclosure of the premium, the death benefit of the proposed replacing or additional policy, and the date when the policy values of the existing policy or contract will be insufficient to pay the premiums of the replacing or additional policy or contract.

3. Each insurer shall adopt written procedures to reasonably avoid churning of policies or contracts that it has issued, and failure to adopt written procedures sufficient to reasonably avoid churning shall be an unfair method of competition and an unfair or deceptive act or practice.

(bb) *Deceptive use of name.*--Using the name or logo of a financial institution, as defined in s. 655.005(1), or its affiliates or subsidiaries when marketing or soliciting existing or prospective customers if such marketing materials are used without the written consent of the financial institution and in a manner that would lead a reasonable person to believe that the material or solicitation originated from, was endorsed by, or is related to or the responsibility of the financial institution or its affiliates or subsidiaries.

(cc) *Unfair rate increases for persons in military service.*--Charging an increased premium for reinstating a motor vehicle insurance policy that was canceled or suspended by the insured solely for the reason that he or she was transferred out of this state while serving in the United States Armed Forces or on active duty in the National Guard or United States Armed Forces Reserve. It is also an unfair practice for an insurer to charge an increased premium for a new motor vehicle insurance policy if the applicant for coverage or his or her covered dependents were previously insured with a different insurer and canceled that policy solely for the reason that he or she was transferred out of this state while serving in the United States Armed Forces or on active duty in the National Guard or United States Armed Forces Reserve. For purposes of determining premiums, an insurer shall consider such persons as having maintained continuous coverage.

(dd) *Life insurance limitations based on past foreign travel experiences or future foreign travel plans.*--

1. An insurer may not refuse life insurance to; refuse to continue the life insurance of; or limit the amount, extent, or kind of life insurance coverage available to an individual based solely on the individual's past lawful foreign travel experiences.

2. An insurer may not refuse life insurance to; refuse to continue the life insurance of; or limit the amount, extent, or kind of life insurance coverage available to an individual based solely on the individual's future lawful travel plans unless the insurer can demonstrate and the Office of Insurance Regulation determines that:

a. Individuals who travel are a separate actuarially supportable class whose risk of loss is different from those individuals who do not travel; and

b. Such risk classification is based upon sound actuarial principles and actual or reasonably anticipated experience that correlates to the risk of travel to a specific destination.

3. The commission may adopt rules pursuant to ss. 120.536(1) and 120.54 necessary to implement this paragraph and may provide for limited exceptions that are based upon national or international emergency conditions that affect the public health, safety, and welfare and that are consistent with public policy.

4. Each market conduct examination of a life insurer conducted pursuant to s. 624.3161 shall include a review of every application under which such insurer refused to issue life insurance; refused to continue life insurance; or limited the amount, extent, or kind of life insurance issued, based upon future lawful travel plans.

5. The administrative fines provided in s. 624.4211(2) and (3) shall be trebled for violations of this paragraph.

6. The Office of Insurance Regulation shall report to the President of the Senate and the Speaker of the House of Representatives by March 1, annually, on the implementation of this paragraph. The report shall include, but not be limited to, the number of applications under which life insurance was denied, continuance was refused, or coverage was limited based on future travel plans; the number of insurers taking such action; and the reason for taking each such action.

(ee) *Fraudulent signatures on an application or policy-related document.*--Willfully submitting to an insurer on behalf of a consumer an insurance application or policy-related document bearing a false or fraudulent signature.

(ff) *Unlawful use of designations; misrepresentation of agent qualifications.*--

1. A licensee may not, in any sales presentation or solicitation for insurance, use a designation or title in such a way as to falsely imply that the licensee:

a. Possesses special financial knowledge or has obtained specialized financial training; or

b. Is certified or qualified to provide specialized financial advice to senior citizens.

2. A licensee may not use terms such as "financial advisor" in such a way as to falsely imply that the licensee is licensed or qualified to discuss, sell, or recommend financial products other than insurance products.

3. A licensee may not, in any sales presentation or solicitation for insurance, falsely imply that he or she is qualified to discuss, recommend, or sell securities or other investment products in addition to insurance products.

4. A licensee who also holds a designation as a certified financial planner (CFP), chartered life underwriter (CLU), chartered financial consultant (ChFC), life underwriter training council fellow (LUTC), or the appropriate license to sell securities from the Financial Industry Regulatory Authority (FINRA) may inform the customer of those licenses or designations and make recommendations in accordance with those licenses or designations, and in so doing does not violate this paragraph.

(gg) *Out-of-network reimbursement*.--Willfully failing to comply with s. 627.64194 with such frequency as to indicate a general business practice.

<Text of subsec. (1)(hh) effective Jan. 1, 2026.>

(hh) *Sales practices for pet wellness programs.*--

1. A pet insurance agent may not market a wellness program as pet insurance.

2. If a wellness program is sold by a pet insurance agent:

a. The purchase of the wellness program may not be a prerequisite to the purchase of pet insurance;

b. The costs of the wellness program must be separate and identifiable from any pet insurance policy sold by the pet insurance agent;

c. The terms and conditions of the wellness program must be separate from any pet insurance policy sold by the agent;

d. The products or coverages available through the wellness program may not duplicate the products or coverages available through the pet insurance policy; and

e. The advertising of the wellness program must not be misleading.

**(2) Alternative rates of payment.--**Nothing in this section shall be construed to prohibit an insurer or insurers from negotiating or entering into contracts with licensed health care providers for alternative rates of payment, or from limiting payments under policies pursuant to agreements with insureds, as long as the insurer offers the benefit of such alternative rates to insureds who select designated providers.

**(3) Inpatient facility network.--**This section may not be construed to prohibit a Medicare supplement insurer from granting a premium credit to insureds for using an in-network inpatient facility.

**(4) Participation in a wellness or health improvement program.--**

(a) *Authorization to offer rewards or incentives for participation.*--An insurer issuing a group or individual health benefit plan may offer a voluntary wellness or health improvement program and may encourage or reward participation in the program by authorizing rewards or incentives, including, but not limited to, merchandise, gift cards, debit cards, premium discounts, contributions to a member's health savings account, or modifications to copayment, deductible, or coinsurance amounts. Any advertisement of the program is not subject to the limitations set forth in paragraph (1)(m).

(b) *Verification of medical condition by nonparticipants due to medical condition.*--An insurer may require a member of a health benefit plan to provide verification, such as an affirming statement from the member's physician, that the member's medical condition makes it unreasonably difficult or inadvisable to participate in the wellness or health improvement program in order for that nonparticipant to receive the reward or incentive.

(c) *Disclosure requirement.*--A reward or incentive offered under this subsection shall be disclosed in the policy or certificate.

(d) *Other incentives.*--This subsection does not prohibit insurers from offering other incentives or rewards for adherence to a wellness or health improvement program if otherwise authorized by state or federal law.

**(5) Loss control and loss mitigation.--**This section does not prohibit an insurer or agent from offering or giving to an insured, for free or at a discounted price, services or other merchandise, goods, wares, or other items of value that relate to loss control or loss mitigation with respect to the risks covered under the policy.

**Credits**

Added by Laws 1976, c. 76-260, § 9; Laws 1977, c. 77-174, § 1; Laws 1977, c. 77-468, § 19; Laws 1978, c. 78-377, § 1; Laws 1979, c. 79-289, § 1; Laws 1980, c. 80-152, § 1; Laws 1980, c. 80-373, § 1; Laws 1982, c. 82-235, § 1; Laws 1983, c. 83-216, § 90; Laws 1983, c. 83-342, §§ 1, 2; Laws 1984, c. 84-157, § 1; Laws 1985, c. 85-62, § 14; Laws 1985, c. 85-182, § 3; Laws 1985, c. 85-233, § 1; Laws 1986, c. 86-160, § 4; Laws 1987, c. 87-226, § 27; Laws 1988, c. 88-370, § 13; Laws 1989, c. 89-360, § 60; Laws 1990, c. 90-85, § 1; Laws 1990, c. 90-119, § 33; Laws 1990, c. 90-363, § 186; Laws 1991, c. 91-110, § 58; Laws 1991, c. 91-224, § 256; Laws 1992, c. 92-146, § 38; Laws 1995, c. 95-187, § 6; Laws 1995, c. 95-219, § 1. Amended by Laws 1997, c. 97-102, § 314, eff. July 1, 1997; Laws 1999, c. 99-3, § 24, eff. June 29, 1999; Laws 1999, c. 99-286, § 5, eff. July 1, 1999; Laws 1999, c. 99-388, § 1, eff. July 1, 1999; Laws 2000, c. 2000-192, § 2, eff. June 5, 2000; Laws 2001, c. 2001-178, § 1, eff. July 1, 2001; Laws 2002, c. 2002-25, § 2, eff. July 1, 2002; Laws 2002, c. 2002-55, § 7, eff. Jan. 1, 2003; Laws 2002, c. 2002-206, § 65, eff. Oct. 1, 2002; Laws 2003, c. 2003-1, § 88, eff. July 1, 2003; Laws 2003, c. 2003-139, § 2, eff. July 1, 2003; Laws 2003, c. 2003-261, § 1028, eff. June 26, 2003; Laws 2003, c. 2003-267, §§ 4, 65, eff. June 26, 2003; Laws 2003, c. 2003-281, §§ 58, 80, eff. July 11, 2003; Laws 2004, c. 2004-340, § 4, eff. July 1, 2004; Laws 2004, c. 2004-390, § 87, eff. July 1, 2004; Laws 2005, c. 2005-41, § 1, eff. May 24, 2005; Laws 2006, c. 2006-277, § 2, eff. July 1, 2006; Laws 2007, c. 2007-44, § 2, eff. Oct. 1, 2007; Laws 2008, c. 2008-66, § 8, eff. July 1, 2008; Laws 2008, c. 2008-237, § 7, eff. Jan. 1, 2009; Laws 2010, c. 2010-175, § 6, eff. Jan. 1, 2011; Laws 2011, c. 2011-167, § 1, eff. July 1, 2011; Laws 2012, c. 2012-151, § 10, eff. July 1, 2012; Laws 2012, c. 2012-197, § 5, eff. July 1, 2012; Laws 2014, c. 2014-103, § 7, eff. July 1, 2014; Laws 2014, c. 2014-180, § 1, eff. July 1, 2014; Laws 2015, c. 2015-180, § 14, eff. July 1, 2015; Laws 2016, c. 2016-222, § 11, eff. July 1, 2016; Laws 2018, c. 2018-110, § 83, eff. May 10, 2018; Laws 2018, c. 2018-149, § 1, eff. July 1, 2018; Laws 2018, c. 2018-153, § 1, eff. July 1, 2018; Laws 2019, c. 2019-108, § 11, eff. July 1, 2019; Laws 2021, c. 2021-104, § 12, eff. June 16, 2021; Laws 2022, c. 2022-4, § 54, eff. May 13, 2022; Laws 2022, c. 2022-271, § 7, eff. Dec. 16, 2022; Laws 2023, c. 2023-130, § 12, eff. July 1, 2023; Laws 2023, c. 2023-172, § 14, eff. July 1, 2023; Laws 2023, c. 2023-216, § 2, eff. July 1, 2023; Laws 2025, c. 2025-11, § 2, eff. Jan. 1, 2026; Laws 2025, c. 2025-145, § 7, eff. July 1, 2025.

Notes of Decisions (119)

West's F. S. A. § 626.9541, FL ST § 626.9541

Current with laws, joint and concurrent resolutions and memorials in effect from the 2025 Special Session C and through July 1, 2025, of the 2025 first regular session.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.